680 F.2d 1318
 29 Fair Empl.Prac.Cas. 393,
29 Empl. Prac. Dec. P 32,914
Leonard ALLISON, Jr., et al., Plaintiffs,
Pete R. Bacas, D. J. Fitzpatrick, Elmer M. Herndon, et al.,
Plaintiffs-Appellants,
v.
WESTERN UNION TELEGRAPH COMPANY, Defendant-Appellee.
 No. 80-7698.
 United States Court of Appeals,
Eleventh Circuit.
 July 19, 1982.
 
 James L. Ford, Atlanta, Ga., for plaintiffs-appellants.
 Hicks, Maloof & Campbell, Robert E. Hicks, Charles E. Wilson, III, Bruce M. Edenfield, Atlanta, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before GODBOLD, Chief Judge, RONEY and WOOD*, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Six former employees of Western Union Telegraph Company who alleged violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 et seq. (ADEA), now appeal final judgments entered in favor of defendant Western Union. Five of the judgments were entered on jury verdicts, one on a directed verdict. Three verdicts went in favor of plaintiffs and are not appealed. The alleged discrimination occurred when plaintiffs were furloughed because of a nationwide reduction in work force at Western Union. The issues on appeal are (1) whether the court properly denied plaintiffs' motion for directed verdicts; (2) whether the jury instructions were adequate to allow the jury to evaluate the case as a disparate treatment or disparate impact case; and (3) whether the court properly granted Western Union's motion for a directed verdict as to one of the plaintiffs who failed to file the notice of intent to sue. We affirm.
 
 
 2
 This action arises from a nationwide reduction in force which Western Union called "Furlough Force Reduction" or "FFR." Each of the plaintiffs furloughed at the time of the force reduction, with the exception of one, was a management-level employee in Western Union's Atlanta area.
 
 
 3
 The Atlanta area manager was directed by officials to reduce his management force in that area by thirteen. He was given no instructions on the selection of terminees, nor any specific plans or methods for determining which employees to terminate. The manager thought the only criteria was to "select those employees that you feel like you would miss the least." Of those terminated, only one employee was under forty, outside the ADEA protected age group. Plaintiffs contend that although there was evidence of disparate treatment as to each of the plaintiffs, evidence of adverse impact upon the protected age group pervades the entire case and instructions should have been submitted to the jury on that issue.
 
 
 4
 Five plaintiffs lost to a jury. To prevail on appeal, they must show their cases were improperly tried. The main argument focuses on the jury instructions and whether the legal principles were properly applied in distinguishing a disparate treatment case and a disparate impact case. It is helpful in this regard to review the requirement for a prima facie case in each type of reduction-in-force age discrimination case. In Williams v. General Motors Corp., 656 F.2d 120 (5th Cir. 1981),[1] this Court held that the plaintiff in a reduction-in-force ADEA case could establish a prima facie case by:
 
 
 5
 (1) satisfying the "standing requirements under the statute," ... i.e., showing that he is within the protected age group and that he has been adversely affected-discharged or demoted-by defendant's employment decision;
 
 
 6
 (2) showing that he was qualified to assume another position at the time of discharge or demotion; and
 
 
 7
 (3) producing evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.
 
 
 8
 656 F.2d at 129.
 
 
 9
 To satisfy the third requirement in Williams, "the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining a plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration." 656 F.2d at 130. Once the plaintiff has made a prima facie case, disparate treatment occurs when the employer treats some people less favorably than others because of race, color, religion, sex or national origin. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335-36 n.15, 97 S.Ct. 1843, 1854-55 n.15, 52 L.Ed.2d 396 (1977). The burden then shifts to the employer to go forward with evidence of "some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If that is done, the plaintiff, who has the ultimate burden, is then afforded the opportunity to demonstrate by competent evidence that the employer's presumptively valid reasons are a coverup or pretext. 411 U.S. at 805, 93 S.Ct. at 1825.
 
 
 10
 A disparate impact case results when employment practices that are facially neutral in their treatment of different groups fall more harshly on one group than another and cannot be justified by business necessity. Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977); Albemarle Paper Company v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). One of the critical differences between this type case and a disparate treatment case is that proof of discriminatory motive is not required under a disparate impact theory. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). Once the plaintiff has established that an employment practice results in disparate impact on a protected group, the burden shifts to the employer to show that the practice has a manifest relationship to the employment in question, the touchstone being business necessity and successful job performance. Dothard v. Rawlinson, 433 U.S. 324, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977).
 
 
 11
 Notwithstanding which theory is being asserted the prima facie case serves an important function in the litigation. It raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. Furnco Construction Co. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). If the plaintiff's evidence is substantial and if the employer is silent in the face of the presumption raised by it, the court must enter judgment for the plaintiff because no issue of fact remains in the case. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).
 
 
 12
 Contrary to plaintiffs' argument that a prima facie case of disparate impact was established through statistical evidence, and the subjective criteria used by Western Union to select those furloughed was insufficient to overcome the prima facie showing of discrimination, the court properly denied plaintiffs' motion for a directed verdict.
 
 
 13
 First, an employer can rebut the presumption of discrimination by producing evidence which either refutes a statistical analysis or, if in a disparate treatment case, shows that the plaintiff was rejected for a legitimate nondiscriminatory reason. The only evidence plaintiffs attempted to bring out at trial to support the disparate impact theory was offered by their expert witness, Dr. Martin Shapiro, who was rebutted by Western Union's expert witness, Dr. Phillip Carlson. Dr. Carlson testified that he conducted three tests and there was no statistical basis upon which to draw an inference that age played a factor in the selection of those furloughed. This rebuttal raised a genuine issue of fact and was sufficient to defeat plaintiffs' motion for a directed verdict and take the case to the jury.
 
 
 14
 Second, the subjective criteria "choose the person you will miss the least" which plaintiffs challenge is not as fatal as plaintiffs would argue. An employer's decision may properly be based on subjective factors. See Hereford v. Huntsville Board of Education, 574 F.2d 268, 270 (5th Cir. 1978). Such criteria is not in and of itself violative of the ADEA. It is only when such criteria result in discriminatory impact that a violation occurs. See Hester v. Southern Railroad Co., 497 F.2d 1374, 1381 (5th Cir. 1974).
 
 
 15
 Plaintiffs launch a major argument against the jury instructions given by the court. Although both parties made lengthy objections to the jury instructions, plaintiffs on appeal object to seven jury instructions. The basic thrust of their argument is the court erred in instructing the jury on the elements of disparate treatment and in refusing to instruct the jury on the question of disparate impact. After extensive review of the record and specifically the requested jury instructions, objections filed to proposed instructions, final charge to the jury, and objections to the charge, we find the trial judge appreciated the distinction between disparate impact and disparate treatment and gave adequate instructions on all issues.
 
 
 16
 The charge encompassed 29 pages of transcript. The judge submitted to the jury all they needed to make factual findings of whether there existed an ADEA violation. Although all portions of the charge are not as clear as might be desirable and the disparate impact instructions are combined with the disparate treatment instructions, without explicit designation as such, both theories were submitted to the jury.
 
 
 17
 In reviewing the adequacy of the trial court's instructions to the jury, "the appellate court must examine the entire charge and determine whether, taken as a whole, the issues and law presented to the jury were adequate." Davis v. McAllister, 631 F.2d 1256, 1260 (5th Cir. 1980), cert. denied, 452 U.S. 907, 101 S.Ct. 3035, 69 L.Ed.2d 409 (1981). If the charge in general correctly instructs the jury, then even though a portion is technically imperfect, no harmful error is committed. Troutman v. Southern Railroad Co., 441 F.2d 586, 590 (5th Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).
 
 
 18
 Since there was no error, even if the disparate impact theory is appropriate, as argued by plaintiffs, and the defendant prevailed, we need not here decide whether in a lay-off situation the disparate impact theory is inapplicable, as argued by the defendants.
 
 
 19
 One plaintiff's case rests on different grounds than the other five. A directed verdict was entered against him by the court. He was terminated in a separate nationwide force reduction occurring two years prior. He contended he was similarly situated with the other plaintiffs and could consent to join as a party plaintiff to the action. The district court granted Western Union's motion for a directed verdict based on plaintiff's failure to file the requisite 180-day notice of intent to file suit as required by the ADEA, 29 U.S.C.A. § 626(d)(1). The purpose of the notice requirement is to inform the Labor Department that the aggrieved person intends to file a lawsuit. The Department, in turn, must inform all persons named as prospective defendants and seek informal conciliation. 29 U.S.C.A. § 626(d). Since plaintiff failed to satisfy this requirement and failed to establish any equitable consideration that would work to toll the 180-day requirement the district court properly granted the directed verdict. See Templeton v. Western Union Telegraph Co., 607 F.2d 89 (5th Cir. 1979).
 
 
 20
 AFFIRMED.
 
 
 
 *
 Honorable Harlington Wood, Jr., U. S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The Eleventh Circuit, in the en banc decision of Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981