**Grady Allen BARNES, et al., Plaintiffs,**

v.

**SOUTHWEST FOREST INDUSTRIES, INC., Defendant.**

**No. MCA 85–2003–RV.**

United States District Court, N.D. Florida, Panama City Division.

March 10, 1986.

Benjamin R. Patterson, Patterson and Traynham, Tallahassee, Fla., for plaintiffs.

Richard Smoak, Sale, Brown & Smoak, Panama City, Fla., G. Thomas Harper, Jacksonville, Fla., for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

VINSON, District Judge.

The six plaintiffs in this case (Grady Allen Barnes, Bill Blount, M.C. Hatcher, Ben Pickles, James Seaborn, and M.E. Swindell) allege in their complaint that the defendant discriminated against them on the basis of age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), Title 29, *United States Code*, Section 621, *et seq.* Both parties have filed motions for summary judgment (docs. 27, 33) and, pursuant to Rule 56, Federal Rules of Civil Procedure, the parties have submitted various affidavits, documents, and materials in support of their respective motions. This Court has jurisdiction pursuant to Title 29, *United States Code*, Section 626, and Title 28, *United States Code*, Sections 1331 and 1337. For the following reasons, the defendant's motion for summary judgment is GRANTED, and the plaintiffs' motion for summary judgment is DENIED.

### I. FACTS

Prior to May 1, 1984, each of the plaintiffs was employed by Southwest Forest Industries, Inc. ("Southwest") as a security guard at Southwest's paper mill, located in Panama City, Florida. Effective May 1, 1984, however, Southwest eliminated all of its in-house security force and contracted with Wackenhut Security Services, Inc. ("Wackenhut"), for Wackenhut to perform the security function that was being performed by the plaintiffs. Consequently, each of the plaintiffs was terminated from his position as a security guard with Southwest on May 1, 1984. According to Southwest, the decision to terminate the plaintiffs and to contract with Wackenhut was based on the cost savings which would result. [*Stewart Affidavit*, doc. 29]

At the time of their terminations, the plaintiffs were each over the age of forty years and fell within the protected age category under the ADEA. [29 U.S.C. § 631(a) ("The prohibitions of this chapter shall be limited to individuals who are at least 40 years of age, but less than 70 years of age.")] An additional security guard, Nadine Hines, was also terminated along with the plaintiffs. Hines, however, was under forty years of age at the time and is not a party to this action.

After May 1, 1984, each plaintiff reapplied for employment with Southwest, and then proceeded to file employment discrimination charges with the Florida Commission on Human Relations ("FCHR").[1] During the period between June 5, 1984, and July 24, 1984, Southwest did not hire any new operations employees at its Panama City paper mill. During that period, in fact, the only person hired at the facility was a temporary employee in the Administrative Services Department, hired as a substitute for a vacationing employee. [*Taylor Affidavit*, doc. 29]

After withdrawing their claims with FCHR, the plaintiffs filed, with the Equal Employment Opportunity Commission, timely notices of their intentions to sue under the ADEA. This action was subsequently filed on January 2, 1985. In their complaint, the plaintiffs claim: (1) that they were terminated while younger employees of Southwest were retained; and (2) that after they were terminated, Southwest hired younger persons in positions for which the plaintiffs were qualified. According to the complaint, Southwest discriminated against the plaintiffs in violation of the ADEA by either intentionally premising personnel decisions on the basis of age, or applying personnel practices that disparately impacted upon the plaintiffs and others within the protected age group. Other relevant facts will be developed fur-

ther in the context of the legal framework set forth below.

## II. ELEMENTS OF A PRIMA FACIE CASE UNDER THE ADEA

In order to evaluate whether the plaintiffs or the defendant is entitled to summary judgment in this case, it is necessary to consider the burdens of proof borne by each side in an age discrimination suit, as well as the various models of proof available. The first step is to insure that the plaintiffs' claims are properly characterized in order to invoke the appropriate set of rules. While it is not altogether clear from the complaint, the plaintiffs' memoranda in support of their motion for summary judgment clearly indicate that the gravamen of their claim is that, even though Southwest was reorganizing the paper mill because of economic conditions, it nonetheless acted discriminatorily *by failing to retain or reemploy* the plaintiffs in favor of younger individuals. Consequently, this case is most akin to the "reduction-in-force" cases which have become quite prevalent within the past five years. *See, e.g., Thornbrough v. Columbus and Greenville Railroad Co.,* 760 F.2d 633 (5th Cir.1985); *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339 (D.C.Cir.1983); *Fink v. Western Electric Co.,* 708 F.2d 909 (4th Cir.1983); *Massarsky v. General Motors Corp.,* 706 F.2d 111 (3d Cir.1983); *Allison v. Western Union Telegraph Co.,* 680 F.2d 1318 (11th Cir.1982); *Williams v. General Motors Corp.,* 656 F.2d 120 (5th Cir.1981); *Oxman v. WLS–TV,* 609 F.Supp. 1384 (N.D.Ill.1985); *Capps v. Southeast Packing Corp.,* 612 F.Supp. 419 (N.D.Ga.1984).

There is a relationship between the parties' respective burdens of proof and the plaintiffs' obligation of establishing a *prima facie* case. Although this circuit has held that "[f]ailure to establish a prima facie case warrants summary judgment"

1. 29 U.S.C. § 633(b). Barnes reapplied on June 5, 1984, and filed charges with FCHR on July 24, 1984; Blount reapplied on June 24, 1984, and filed charges on July 19, 1984; Pickles reapplied on June 5, 1984, and filed charges on July 7, 1984; and Seaborn reapplied on June 13, 1984, and filed charges on July 6, 1984. Plaintiffs Hatcher and Swindell did not reapply with Southwest until November 5, 1984, and November 18, 1984, respectively. At that time, they had voluntarily withdrawn all charges previously filed with FCHR. (Doc. 45 at 10)

[*Pace v. Southern Railway System,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983)], it needs to be clearly understood that the test for summary judgment, whether there is a material factual issue, is the equivalent of the plaintiffs' obligation to establish the minimal particular elements of a *prima facie employment discrimination* case. In this type of case, therefore, the failure to establish a *prima facie* case generally means that there are no material facts at issue. *See Thornbrough v. Columbus and Greenville R. Co.,* 760 F.2d 633, 641 N. 8, 9 (5th Cir.1985). Therefore, a brief review of the development of the *prima facie* case in these kinds of cases may be helpful in this summary judgment analysis.

Section 623 of the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual ... because of such individual's age." [29 U.S.C. § 623(a)] Recognizing that a plaintiff will rarely be able to demonstrate discrimination through direct evidence, the courts have adopted various hybrids of the analysis articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), a race discrimination case brought under Title VII of the Civil Rights Act of 1964. [42 U.S.C. § 2000e *et seq.*] In *McDonnell Douglas,* Green had been "laid off in the course of a general reduction in the petitioner's work force." *Id.* at 794, 93 S.Ct. at 1820. The employer's refusal to rehire Green precipitated the lawsuit. The Court held that, in light of the difficulty of directly proving discrimination, the plaintiff may establish a *prima facie* case by demonstrating:

(i) that he belongs to a racial minority;

(ii) that he applied and was qualified for a job for which the employer was seeking applicants;

(iii) that despite his qualifications, he was rejected; and

(iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.*

at 802, 93 S.Ct. at 1824 (footnote omitted).

If the plaintiff is able to comply, a *prima facie* case is made out, which creates a "legally mandatory inference of discrimination" that the employer unlawfully discriminated against the employee. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 297 (1981); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 597 (1978).

If the plaintiff successfully establishes a *prima facie* case of discriminatory treatment, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. By meeting this burden of production, the employer essentially rebuts the presumption and dissolves the plaintiff's inference of discrimination. *Burdine, supra,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The defendant need not persuade the trier of fact that it was actually motivated by proper reasons; instead, its burden is merely one of production. *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978).

Finally, if the employer meets its burden of production, the plaintiff "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas, supra,* 411 U.S. at 804, 93 S.Ct. at 1825. The plaintiff may carry its burden by showing either that the defendant was more likely motivated by a discriminatory reason, or that the defendant's proferred reasons are not credible. *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095. At all times, however, the plaintiff bears the ultimate burden of persuading the trier of fact that he was the victim of intentional discrimination. *Id.* at 253, 101 S.Ct. at 1093.

The various circuits have recognized the efficacy of the *McDonnell Douglas* model in the context of age discrimination suits. *See, e.g., Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525 (11th Cir. 1985); *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435 (11th Cir.1985); *Pace v. Southern Railway System,* 701 F.2d 1383 (11th Cir.1983); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66 (6th Cir.1982); *Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369 (5th Cir.1980); *Price v. Maryland Casualty Co.,* 561 F.2d 609, 612 (5th Cir.1977). However, in the context of cases where the plaintiff was discharged because of a reduction in the employer's work force, the courts have recognized that strict compliance with the language of *McDonnell Douglas* would often leave the plaintiff without a remedy. This is because, in a reduction in work force situation, the employer rarely, if ever, seeks other applicants for employment. Therefore, the fourth prong of the *McDonnell Douglas* test would be impossible to meet, and a plaintiff would not be able to establish a *prima facie* case. *See Pace v. Southern Railway System, supra,* 701 F.2d at 1386–87; *McCorstin v. U.S. Steel Corp.,* 621 F.2d 749 (5th Cir.1980). It is also understood, of course, that *McDonnell Douglas* does not "establish an immutable definition of a prima facie case." *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 735 (5th Cir.1977). Consequently, many of the courts have not applied a rigid formula, and have required only that a plaintiff "present[ ] proof of a kind and quantity that requires the defendant to come forward with non-discriminatory reasons for the adverse employment action." *Pace v. Southern Railway Systems, supra,* 701 F.2d at 1388. The plaintiff may do so by (1) satisfying the elements of *McDonnell Douglas,* if possible; (2) presenting direct evidence of discrimination; or (3) presenting statistical evidence of a pattern or practice of discrimination "allowing the reasonable inference that age played a role in [the plaintiff's] discharge." *McCorstin v. U.S. Steel Corp., supra,* 621 F.2d at 754. *See*

*Pace v. Southern Railway System, supra,* 701 F.2d at 1388.

Other courts have taken a slightly different approach to the *prima facie* case in reduction-in-force cases. For example, the former Fifth Circuit, drawing upon *Price v. Maryland Casualty Co., supra,* and *McCorstin v. U.S. Steel Corp., supra,* held that a plaintiff in a job reduction setting can establish a *prima facie* case by:

(1) satisfying the "standing requirements under the statute," *i.e.,* by showing that he is within the protected age group and that he had been adversely affected—discharged or demoted—by defendant's employment decision;

(2) showing that he was qualified to assume another position at the time of discharge or demotion; and

(3) producing evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981) (citation and footnote omitted).

The third requirement of this test is "based upon [the court's] understanding of the duty the ADEA imposes upon any employer[,] ... [the duty to] reach employment decisions without regard to age...." *Id.* at 129. Specifically, the plaintiff's evidence under the third requirement must lead the factfinder reasonably to conclude either "(1) that defendant consciously refused to consider retaining or relocating the plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration." *Id.* at 130. The remaining burdens of *McDonnell Douglas* continue to apply after the plaintiff successfully establishes a *prima facie* case under this test— *i.e.,* the employer bears the burden of producing evidence of a legitimate reason for the failure to retain, and the employee is provided the opportunity to show that the employer's reasons are pretextual. *See Allison v. Western Union Telegraph Co., supra,* 680 F.2d at 1321 (recognizing that the shifting burdens of *McDonnell Doug-*

*las* apply after plaintiff proves *prima facie* case under *Williams, supra* ).

The approach taken by the former Fifth Circuit in *Williams v. General Motors Corp., supra,* has been implicitly questioned by a later decision of the Fifth Circuit, *Thornbrough v. Columbus and Greenville Railroad Co., supra,* and has been expressly rejected by at least one district court in another circuit, the district court for the Northern District of Illinois, in *Oxman v. WLS–TV, supra.* Criticism of *Williams* is based on the premise that, by requiring direct evidence of an employer's discriminatory intent, the third requirement of *Williams* defeats one of the primary purposes of *McDonnell Douglas*—*i.e.,* to allow a plaintiff to prove a *prima facie* case objectively, "without having to exhume the direct evidence of intent buried in the mind of the employer." *Oxman v. WLS–TV, supra,* 609 F.Supp. at 1390. In addition, *Williams* has been said to "collapse the *prima facie* case with the third, or 'pretext,' step in the [*McDonnell Douglas* ] burden-shifting game." *Id.*

The difficulty presented here, however, arises because of the Eleventh Circuit's uncertain position regarding the viability of *Williams.*[2] In *Allison v. Western Union Telegraph Co., supra,* 680 F.2d at 1321, an age discrimination case brought by former employees who were furloughed because of a nationwide reduction in work force at Western Union, a panel of the Eleventh Circuit cited *Williams* as the model for establishing a *prima facie* case in "each type of reduction-in-force age discrimination case." *Id.* However, in a subsequent reduction-in-force case, a different panel of the Eleventh Circuit stressed that the *McDonnell Douglas* test and its variations were "not the alpha and omega of possible tests in the age discrimination context." *Pace v. Southern Railway System, supra,* 701 F.2d at 1387 (*citing McCorstin v. U.S. Steel Corp., supra,* 621 F.2d at 753). Addi-

tionally, the court emphasized that, in reduction-in-force cases, one should employ a more flexible analysis when evaluating whether the plaintiff has established a *prima facie* case.

■ When *Pace* was decided, *Williams* was binding precedent in the Eleventh Circuit. Nowhere in its opinion, however, did the court in *Pace* mention *Williams* or the test which it had articulated. Because only an *en banc* decision of the Eleventh Circuit is capable of overruling former Fifth Circuit precedent adopted under *Bonner v. City of Prichard,*[3] *supra,* the failure of the court in *Pace* to cite *Williams* can be explained in either of two ways: First, it is possible that *Williams* (or *Allison* ) simply had never been drawn to the court's attention. Realizing that the "pure" form of *McDonnell Douglas* was inapplicable under the facts, the court merely attempted to do that which the *Williams* court had already accomplished. Second, the court may have opined, *sub silentio,* that *Williams* was consistent with the flexible approach taken in *Pace.* That is, the court in *Pace* may have believed that the language in *Williams,* especially that of its third requirement, was sufficiently broad to allow a plaintiff great latitude in establishing his *prima facie* case. This explanation is consistent with additional language in *Williams,* indicating that the third requirement may be satisfied *by direct evidence,* "*e.g.,* a paper scrap with the notation 'Lay-off—Too Old' beside a plaintiff's name," *or circumstantial evidence,* such as "statistical evidence, evidence of employer subterfuge, *or other forms.* . . . " *Williams v. General Motors Corp., supra,* 656 F.2d at 130 (emphasis added). Read in this context, it is apparent that *Williams* and *Pace* can stand for identical propositions: that the plaintiff's burden is merely to introduce evidence that supports a reasonable inference of intentional age discrimination. *Williams* merely delineates a

---

2. *Williams* was decided by the former Fifth Circuit on September 14, 1981, and is binding precedent in the Eleventh Circuit under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.) (*en banc* ) (court adopted as precedent all

decisions of former Fifth Circuit decided before October 1, 1981).

3. *See Bonner v. City of Prichard, supra,* 661 F.2d at 1210.

more workable formula for reduction-in-force cases.[4]

In view of the facts presented by this case, I conclude that the test articulated in *Williams* is consistent with *Pace* and *Allison*, is binding precedent, and should be applied to the discharge aspect in this reduction-in-force case. However, in doing so, I also recognize that common sense, rather than rigidity, must accompany a court's application of the *McDonnell Douglas* formula.

With respect to the plaintiffs' allegations regarding Southwest's failure to rehire, I conclude that the "pure" form of the *McDonnell Douglas* formula is applicable. Alternatively, the plaintiffs are entitled to establish their *prima facie* case through direct evidence or statistical proof of a pattern of age discrimination. *See Pace v. Southern Railway System*, 701 F.2d at 1388. The defendant's opportunity to rebut and the plaintiffs' subsequent opportunity to demonstrate pretext are available in any event.[5]

Finally, as will be addressed more fully *infra*, the plaintiffs' statistics fail to demonstrate any disparate impact on protected individuals under the ADEA. Consequently, I will analyze the parties' motions only under a disparate treatment theory.

## III. SUMMARY JUDGMENT AND AGE DISCRIMINATION: PRIMA FACIE CASE; EMPLOYER'S LEGITIMATE REASONS; PRETEXT.

Courts have often noted that summary judgment is generally inappropriate in age discrimination cases involving issues of intent and motive. *See First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 284–88, 88 S.Ct. 1575, 1590–92, 20 L.Ed.2d 569 (1968); *Ackerman v. Diamond Shamrock Corp., supra*, 670 F.2d at 69. However, the policy underlying Rule 56, Federal Rules of Civil Procedure, mandates that "the moving party has the right to judgment without the expense of a trial when there are no issues of fact left for the trier of fact to determine." *Ackerman v. Diamond Shamrock, supra*, 670 F.2d at 69. As stated by the Eleventh Circuit in *Pace v. Southern Railway System, supra*, 701 F.2d at 1391:

> A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case *and* respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, nondiscriminatory reasons for the discharge, a genuine issue of fact is not automatically presented. *Id.* (emphasis added). *See also Reeves v. General Foods Corp.*, 682 F.2d 515, 521–22 (5th Cir.1982).

In the context of the facts presented by the parties' cross motions for summary judgment in this case, I must consider two questions: (1) whether the plaintiffs or the

---

**4.** I note that the "liberal" test applied by the district court in *Oxman v. WLS–TV, supra*, 609 F.Supp. at 1391, also meets the *Williams* requirements, but it fails to properly isolate the basis of discrimination: unequal treatment of *similarly situated* individuals. To the extent that *Oxman* permits a plaintiff to establish a *prima facie* case simply by demonstrating that *any* younger employee was retained, I strongly disagree. The fact that some employees are retained after a reduction in force is, almost by definition, an inevitable circumstance. Additionally, in the case of large employers, at least one of the remaining employees is almost certain to be younger than the plaintiff. These facts, standing by themselves, do absolutely nothing to raise a reasonable inference of discrimination. *Accord E.E.O.C. v. Western Electric Co., Inc.*, 713 F.2d 1011, 1015 (4th Cir.1983); *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715 (E.D.N.Y.), *aff'd*, 608 F.2d 1369 (2d Cir. 1978).

**5.** If the plaintiffs' case is established by direct evidence, then the defendant can rebut only by actually proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of age as a factor. *See Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir.1982).

defendant presented a genuine issue of fact as to the existence of a *prima facie* case; and (2) if so, have the plaintiffs or defendant presented a genuine issue of fact regarding whether the reasons articulated by Southwest for the discharges and failure to rehire are merely pretextual?

### A. *Prima Facie Case: Discharge and Failure to Retain.*

■ In order to establish a *prima facie* case of discrimination under the ADEA, the plaintiffs must satisfy the three requirements of *Williams v. General Motors Corp., supra,* 656 F.2d at 129–30. [*See supra* section II of this order.] The answers to the plaintiffs' interrogatories clearly indicate that each of the plaintiffs was within the protected age group when he was terminated from employment by Southwest. (Doc. 35, Attachment "A") Consequently, each plaintiff has standing under the first requirement of *Williams.* Second, while neither party has offered evidence of whether the plaintiffs were "qualified to assume another position at the time of discharge" [*Williams, supra,* 656 F.2d at 129], for the purpose of summary judgment, I assume that they were. *See, e.g., Thornbrough v. Columbus and Greenville Railroad Co., supra,* 760 F.2d at 643 n. 15.

Whether a genuine issue of fact exists as to a *prima facie* case, therefore, turns on the third requirement of *Williams:* whether direct or circumstantial evidence exists from which a factfinder might reasonably infer that Southwest had discriminated against the plaintiffs. *Williams, supra,* 656 F.2d at 129. In support of their claim, the plaintiffs rely on two sets of statistics which compare (1) the number of individuals in the protected age group who were discharged on May 1 and 14, 1984, with those that were not within the protected age group; and (2) the number of individuals in the protected age group who were affected by Southwest's reorganization, but were nevertheless retained, with the corresponding number of employees without the protected age group. (Doc. 34 at 11 and Doc. 55 at 6–7) For a number of reasons, I find that the plaintiffs' statistics do not support a *prima facie* case of age discrimination.

First, with regard to the plaintiffs' statistics comparing the ages of employees discharged on May 1 and 14, 1984, I find that this limited sample of Southwest's reduction-in-force decisions is not representative of the results generated over the course of Southwest's reduction-in-force. The plaintiffs' figures indicate that on May 1, 1984, 51.8% of Southwest's employees were 40 years of age or older. Of the 14 "layoff decisions" made by Southwest between May 1, 1984, and May 14, 1984, thirteen employees fell within the protected age group.

Using a binomial distribution analysis approved by the Supreme Court in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), the plaintiffs indicate that of the 14 layoffs, only 7.25 would be expected to be over 40 years of age (51.8% × 14). The difference between observed and expected values, accordingly, is 5.75, which is 3.07 standard deviations from that which would be expected had the termination decisions been made without regard to age.[6]

By considering only a limited number of Southwest's termination decisions, however, the plaintiffs have presented an unrepresentative picture of the defendant's long-term conduct. Attachment "1" indicates that, between January 25, 1982, and September 30, 1984, Southwest terminated 44 employees pursuant to either job elimi-

---

6. The standard deviation is determined by computing the square root of the product of the respective percentages of employees and the number of termination decisions; *i.e.,*

$$\sqrt{.518 \times .482 \times 14} = 1.87$$

The number of standard deviations is then computed by dividing the difference between the observed and expected values by 1.87; *i.e.,* (13–7.25) ÷ 1.87 = 3.07. According to the "2 or 3 standard deviations" test of *Castaneda, supra,* the plaintiffs claim that they have established a *prima facie* case of age discrimination.

nations or reductions in force.[7] Of these 44 terminations, 18 employees were 40 years of age or older. Using the figure of 51.2% as approximately representing the percentage of employees 40 years of age or older,[8] one would expect that, of the 44 terminations from January 25, 1982, 22.53 employees would be in the protected group (.512 × 44). Obviously, there were fewer employees that were terminated in the protected age group than the expected value. Contrary to the plaintiffs' position that the Court should not consider terminations occurring two years prior to May 1, 1984, I find that a broader view of Southwest's reduction-in-force clearly indicates that Southwest has not engaged in any pattern or practice of discrimination that would imply that the plaintiffs were the victims of discrimination. *See Pace v. Southern Railway System, supra,* 701 F.2d at 1388 (plaintiff has burden of "presenting such statistical evidence that will ... give rise to an inference of discrimination.").

The second set of statistics proffered by the plaintiffs is ostensibly more related to the legal question invoked by the complaint—*i.e.,* whether Southwest *retained* employees on the basis of age when reducing its work force at the Panama City paper mill. In support of their claim for discriminatory failure to retain, the plaintiffs offer statistics which compare on the basis of age the number of job retentions among those individuals who were "affected" by Southwest's reorganization from May 1, 1982, as reflected by Attachment "1." Specifically, the plaintiffs state that 62% of the employees who were terminated were within the protected age group. The plaintiffs next indicate that seven individuals who were affected by the reorganization after May 1, 1982, were actually re-

tained by Southwest as indicated by the Special Personnel Report, Attachment "A." None of the seven was in the protected age group, however. If a total of seven employees were retained, the plaintiffs argue that 62% of them, or 4.34, would be expected to be in the protected age group. Working with a standard deviation of

$$1.28 \ [ \ \sqrt{(.62 \times .38 \times 7)} \ ],$$

the plaintiffs conclude that the observed value exceeds the expected value by 3.39 standard deviations. Consequently, the plaintiffs assert that their statistics reveal discrimination under the "2 or 3 standard deviations" rule of *Castaneda v. Partida, supra.*

Careful analysis of the plaintiffs' second set of statistics, however, reveals that they are seriously flawed. First, by comparing the number of employees within the protected group who were retained after being "affected" by Southwest's reduction in force (0) with the corresponding number of employees without the protected age group (7), the plaintiffs' statistics assume that the two groups are similarly situated on all measures except age. This assumption, however, is erroneous. The affidavit of Joyce Taylor, Personnel Supervisor at the Panama City paper mill, states that any employee affected by a reduction-in-force who also falls within the coverage of the collective bargaining agreement (doc. 36) may exercise his right under that agreement "to fill any open jobs, to 'bump' less senior employees in the Mill or, alternatively, to take the layoff subject to recall." *Taylor Affidavit,* doc. 56. The employees within the protected age group who were "affected" by the reorganization, but not retained, did not enjoy the coverage of the collective bargaining agreement as did the seven employees who were ultimately re-

---

7. Two job eliminations occurring in 1980 and 1981 are not considered in that the evidence only indicates that the Panama City paper mill suffered heavy losses in 1982 and 1983. These losses, accordingly, would support the need for a reduction in work force at the Panama City paper mill from 1982. (Doc. 29, *Stewart Affidavit* )

8. The plaintiffs' figure of 51.8% is not entirely accurate in that it fails to account for those individuals who were terminated before May 1, 1984. However, by adjusting the figure to include those individuals identified on Attachment "1," I find that the percentage of protected employees at the paper mill was approximately 51.2%. This percentage would, of course, change slightly as employees are hired and fired. The difference of .6% is insignificant.

tained. The plaintiffs, of course, were security guards and not within the covered group. *See* 29 U.S.C. § 159(b)(3) (NLRB cannot certify union to represent guards if it also represents non-guards). The plaintiffs' failure to account for this variable destroys the relevance of their statistics.

Second, the plaintiffs' statistics compare only those individuals who were selected for termination, but who were ultimately retained, on the basis of whether they fell within or without the protected age group. A more relevant comparison, however, would be between the employees selected for termination and *all* other employees who were not selected, but who remained employed in positions (1) that the terminated employees were qualified to occupy, or (2) that were similar or identical to the positions of the terminated employees. A measure of this comparison would better indicate whether Southwest discriminated between the employees terminated and *all* similarly situated employees remaining in the paper mill's work force, not merely those who were retained after exercising their collective bargaining right to "bump" less senior employees.

Finally, from a statistical standpoint, I note that the small samples used by the plaintiffs' statistics tend to devalue the statistical significance of results obtained through the "2 or 3 standard deviations" rule. Baldus & Cole, *Statistical Proof of Discrimination* 297 (1980). In a case where the sample size is small, "the disparity in treatment may be substantially greater than 2 standard errors on its sampling distribution, yet the corresponding [statistical probability] value will be greater than .05," a value generally accepted as necessary for reliability. *Id.* at 308 n. 36. By noting this, I do not imply that such a problem necessarily exists with the plaintiffs' statistics here. I point out only that the use of the "2 or 3 standard deviations" rule is somewhat suspect and unreliable when the sample size is as small as the number of terminations listed on Attachment "1."

In conclusion, I find that the plaintiffs' statistics completely fail to support a *prima facie* case of age discrimination and, accordingly, fail to raise a genuine issue of fact from which one might infer that Southwest has discriminated in failing to retain the plaintiffs.

■ The plaintiffs also contend that direct evidence of discrimination exists in this case. According to the plaintiffs' reply memorandum (doc. 34), J.S. Ruddick, Manager of Industrial Relations at the paper mill, allegedly told the security guards that they were too old to work in other positions at the mill. Whether Ruddick actually made such a statement, however, is not supported by any affidavit, deposition, or other reliable evidence filed herein. Accordingly, I find no direct evidence of discrimination.

With regard to the plaintiffs' additional assertions of discrimination, I find that they are merely conclusory and unsupported by any evidence in the record. For example, the plaintiffs claim that Southwest could have "rolled" the plaintiffs back into the mill in accordance with its past practices. Or, alternatively, Southwest could have fired probationary employees and allowed the plaintiffs to assume those positions. However, what Southwest might have done to ameliorate the detrimental effects of a reduction-in-force does not bear on whether Southwest discriminated in violation of the ADEA. More importantly, the ADEA is "not intended as a vehicle for judicial review of business decisions" made by an employer such as Southwest. *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir. 1980).

In conclusion, I find that the plaintiffs have failed to establish a *prima facie* case of age discrimination with respect to their claim that Southwest failed to retain them. Specifically, the plaintiffs have failed to produce any evidence, direct or circumstantial, "that [Southwest] consciously refused to consider retaining or relocating [them] because of their age, or ... [that Southwest] regarded age as a negative factor in

such consideration." *Williams v. General Motors Corp.*, 656 F.2d at 130. Under the facts of this case and as discussed earlier, this finding is the equivalent of a finding of no genuine issue of material fact for purposes of Rule 56(e), Federal Rules of Civil Procedure.

In light of this ruling, therefore, it is not necessary for me to address the second issue posed by the cross motions for summary judgment—*i.e.*, whether Southwest's articulated reasons for its actions are pretextual. Because the plaintiffs have failed to establish a *prima facie* case of age discrimination, the defendant need not bear the burden of producing evidence of some legitimate, nondiscriminatory reason for failing to retain or relocate the plaintiffs.[9]

### B. *Prima Facie Case: Failure to Rehire.*

■ The plaintiffs' complaint also asserts a claim that Southwest discriminatorily refused to rehire the plaintiffs on the basis of their ages. The plaintiffs' memoranda fail to clearly distinguish this claim from the claim that Southwest failed to retain the plaintiffs; and to a great degree, the claims are inextricably associated. However, to the extent that there does exist evidence of Southwest's further hirings after the plaintiffs' terminations, I will address this claim accordingly.

As noted earlier, the plaintiffs may establish a *prima facie* case of discriminatory failure to hire by proving (1) that they were members of the protected age group, (2) that adverse employment action was taken against them, *i.e.*, failure to hire, (3) that they were not hired in favor of young-

er individuals, and (4) that they were qualified for the positions for which they were rejected. *See Price v. Maryland Casualty Co.*, supra, 561 F.2d at 612; *Cf. Pace v. Southern Railway System*, supra, 701 F.2d at 1386. There is no dispute that each of the plaintiffs fell within the protected age group. In addition, for purposes of summary judgment, I take as true the plaintiffs' allegations that they were qualified to assume the positions for which they were rejected. Finally, the evidence also indicates that younger persons were hired during the time that the plaintiffs' applications were on file, and that, for approximately one year, not one of the plaintiffs was hired by Southwest. Ostensibly, then, the plaintiffs have established a *prima facie* case of discriminatory hiring.

The defendant, in response to the plaintiffs' claim, essentially asserts that the plaintiffs' hiring claim is spurious. As indicated in the pre-trial stipulation (doc. 45), each of the plaintiffs, after being terminated on May 1, 1984, reapplied with Southwest on the dates indicated in the margin.[10] Subsequently, the plaintiffs filed charges with FCHR, a state agency, on the dates indicated in the margin.[11] The plaintiffs all withdrew their charges with FCHR on or about October 6, 1984. In view of these dates, the defendant now contends that (1) Hatcher and Swindell are precluded from asserting *any* claim for failure to hire, and (2) the remaining plaintiffs' claims are limited to positions that were available between the time that they reapplied with Southwest and the time that they filed their charges with FCHR. According to the Affidavit of Joyce Taylor (doc. 29), no operations employees were hired at the pa-

---

9. I note, however, that even if a threshold *prima facie* case has been established, Southwest has successfully rebutted any inference of discrimination by introducing evidence of (1) the necessity of the reduction in force due to economic conditions [*Stewart Affidavit*, doc. 29], and (2) the fact that the plaintiffs were not employees protected by the terms of the collective bargaining agreement, which would have given them the right to "bump" less senior employees. [*Taylor Affidavit*, doc. 56; *Labor Agreement*, doc. 36] The plaintiffs, on the other hand, have not proffered any substantial evidence that

would raise a genuine issue of fact with respect to whether the reasons articulated by Southwest were pretextual or not worthy of belief.

10. Barnes: June 5, 1984; Pickles: June 5, 1984; Seaborn: June 13, 1984; Blount: June 24, 1984; Hatcher: November 5, 1984; and Swindell: November 18, 1984. (Doc. 45 at 10)

11. Seaborn: July 6, 1984; Pickles: July 6, 1984; Blount: July 19, 1984; Barnes: July 24, 1984; Swindell: August 6, 1984; Hatcher: August 17, 1984.

per mill between June 5, 1984, and July 24, 1984, which is the applicable period.

The defendant's argument is premised mainly on the principle that the plaintiffs' ADEA complaint filed in this Court should be limited to the charges filed in the state administrative proceedings. With regard to Swindell and Hatcher, therefore, FCHR could not possibly have considered any hiring claim, in that those two plaintiffs had not even reapplied with Southwest either before or after they had filed their charges with the state administrative agency. On the other hand, if the remaining plaintiffs had asserted a hiring claim with FCHR, it would have necessarily been related to jobs for which they had been rejected prior to their filing of their state administrative claims. As noted, no new operations positions were available at the Panama City paper mill during that time. According to the defendant, therefore, the plaintiff's have failed to establish a *prima facie* case.

Although the defendant's position is logically sound, I find that the cases cited in support are not directly dispositive. In addition, neither party has provided the Court with any of the materials presented in the state administrative proceeding, such as the written charges filed by the plaintiffs. Accordingly, I decline to decide the issue on summary judgment pursuant to the defendant's somewhat novel theory.[12]

A stronger and more persuasive ground exists for denying the plaintiffs relief on their failure to hire claim when the time frame is expanded into 1985. Even though the plaintiffs may have technically established a *prima facie* case under *McDonnell Douglas, supra,* and *Price v. Maryland Casualty Co., supra,* common sense and logic compel the conclusion that, in fact, the plaintiffs have failed to "provide a basis for an inference that age was a factor

in [Southwest's] employment decision[s]." *Pace v. Southern Railway System, supra,* 701 F.2d at 1387. *See also Simmons v. McGuffey Nursing Home, Inc., supra,* 619 F.2d at 370. Although *McDonnell Douglas* appears satisfied, "[a]ny particular test is only a tool to facilitate evaluation of the proof and to aid the court in evaluating whether a basis for an inference of discrimination has been created." *Pace, supra,* 701 F.2d at 1387. When so evaluated, the *McDonnell Douglas* test has not been properly met in this case.

In their reply brief (doc. 34), the plaintiffs list 18 individuals who were given jobs at the paper mill after May 1, 1984, and who, I will assume, were no more qualified than the plaintiffs.[13] Additionally, the pre-trial stipulation indicates two additional individuals who were hired on May 20, 1985, and June 17, 1985. Of the twenty new positions that were available after May 1, 1984, nine positions were filled by individuals within the protected group. In fact, three of these newly hired employees are Blount, Barnes, and Seaborn, plaintiffs in this action, who were each rehired after May 1, 1985.[14] In essence, the plaintiffs argue that, because younger employees were hired and because the plaintiffs were as qualified as the eleven younger employees, they were discriminated against on the basis of their age. The plaintiffs claim this, however, even though 45% of the individuals hired during the relevant time frame were as old or older than each of the plaintiffs, and three of the new hirees were plaintiffs themselves. To allow the plaintiffs to establish a *prima facie* case in view of these figures would be to ignore a fact which "cut[s] to the heart of the [*McDonnell Douglas* ] presumption...." *Fick v. Canterbury Coal Co.,* 568 F.Supp. 927, 930 (W.D.Pa.1983).

---

12. I note, however, that an overly restrictive time frame for determining the scope of the federal claim would allow for employer manipulation of an official firing date to mask liability.

13. One of these individuals, F.A. Rios, should not even be considered, as he was employed on May 5, 1984, at least one month before the first

of the plaintiffs reapplied with Southwest. For the sake of my analysis, however, I will include Rios.

14. Blount was rehired on May 8, 1985; Barnes was rehired May 20, 1985; Seaborn was rehired June 17, 1985.

Therefore, I find that the plaintiffs have failed to establish a *prima facie* case of discriminatory hiring, either by direct or circumstantial evidence, and that no genuine issue of material fact exists which would necessitate a determination from a factfinder.

## IV. CONCLUSION

In accordance with the findings of fact and conclusions of law set forth above, the defendant is entitled to summary judgment as a matter of law on all counts of the complaint and for all relief requested by the plaintiffs. The defendant's motion for summary judgment is GRANTED, and the plaintiffs' motion for summary judgment is DENIED. The Clerk of the Court is ORDERED to enter judgment for the defendant and against the plaintiffs in accordance with this order. The trial set herein for March 17, 1986, is cancelled, and, instead, the companion case of *Ard v. Southwest Forest Industries*, MCA 85–2002, will be tried.