Grady Allen BARNES, Billy Blount, et al., Plaintiffs-Appellants,

v.

SOUTHWEST FOREST INDUSTRIES, INC., Defendant-Appellee.

No. 86–3441.

United States Court of Appeals, Eleventh Circuit.

April 13, 1987.

Patterson & Traynham, Ben R. Patterson, Tallahassee, Fla., for plaintiffs-appellants.

G. Thomas Harper, Jacksonville, Fla., Robert S. Phifer, Haynsworth, Baldwin, Miles, Johnson, Greaves, Greensboro, N.C., for defendant-appellee.

Before RONEY, Chief Judge, EDMONDSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

This case is an appeal from a summary judgment granted by the United States District Court for the Northern District of Florida. 654 F.Supp. 193 (1986). Because we find that plaintiff/appellants failed to establish a prima facie case, thereby failing to establish a genuine issue of material fact, we affirm.

The six plaintiffs/appellants in this case were employed as security guards at a paper mill owned by Southwest Forest Industries, Inc. ("Southwest"). In the spring of 1984, Southwest terminated its in-house security force and contracted with Wackenhut Security Services, Inc. to provide security. At the time of their termination, thirteen of the fourteen guards were over 40 years old. An additional security guard, a black female, was under 40 years old and is not a party to this action,

Plaintiffs all applied for re-employment in other positions with Southwest, and then filed suit against the company, alleging discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. sec. 621 *et seq.* (1985) (ADEA). Their suit charged that defendant discriminated against them by failing to retain them in other positions and by failing to rehire them once they had been terminated.

Both parties filed motions for summary judgment in the district court. The judge granted the employer's motion. Plaintiffs appeal to this court, requesting that we reverse the judgment of the district court and remand the case with instructions to

grant summary judgment in favor of plaintiffs.

First, we note that we are considering an appeal from a decision regarding summary judgment. In such a case, we must apply the same standards as those that bind the district court. *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1391 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Our inquiry, then, is whether there is any genuine issue remaining in regard to material facts in this case. Fed.R.Civ.P. 56(e).

Such a standard requires that we resolve all reasonable doubts in favor of the non-moving party, *Williams v. City of Dothan*, 745 F.2d 1406 (11th Cir.1984); but it does not require us to resolve *all* doubts in such a manner. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (plurality opinion). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.*

Furthermore, a court must bear in mind the "actual quantum and quality of proof necessary to support liability" in a given case. *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The standard for summary judgment mirrors that for directed verdict, so that if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, we must affirm the grant of summary judgment. *Id.*, 106 S.Ct. at 2512. With these principles in mind, we turn to the substantive law governing this case to determine which facts are material. *Id.* at 2510.

In *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the elements of a prima facie case of discriminatory treatment under Title VII. A plaintiff must demonstrate: (1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected; and (4) that the employer continued to seek applicants of similar qualifications. *Id.* at 802, 93 S.Ct. at 1824. This circuit has adopted that prima facie case for claims of age discrimination under the Age Discrimination in Employment Act (ADEA). *See, e.g., Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525 (11th Cir.1985).

The instant case is somewhat different, however, because it involves a reduction in the employer's work force. In such cases, an employer rarely seeks more applicants for the jobs terminated, a circumstance that makes it almost impossible for a plaintiff to establish the fourth prong of the *McDonnell-Douglas* test. *Pace v. Southern Railway System*, 701 F.2d 1383, 1386–87 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Accordingly, this Circuit has held that a plaintiff in a job-reduction case can establish a prima facie case by demonstrating: (1) that he was in a protected group and was adversely affected by an employment decision; (2) that he was qualified to assume another position at the time of discharge or demotion; and (3) evidence by which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B 1981),[1] *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Although this test is not "the alpha and omega of possible tests in the age discrimination context," *Pace*, 701 F.2d at 1387, it does establish the proposition that the plaintiff's burden is to in-

---

1. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

troduce evidence that supports a reasonable inference of intentional age discrimination.

It is significant that plaintiffs on appeal do not allege age discrimination in regard to the decision to transfer the responsibility for security to an outside company. Southwest presented evidence that its decision to close down its in-house security department was prompted by valid economic considerations. Plaintiffs have not disputed this evidence and have not alleged that Southwest's decision was actually motivated by discrimination. Rather, they argue that Southwest discriminated by failing to retain or rehire them in other jobs in the mill.

■ Plaintiffs attempt to prove this contention with two items of evidence that they claim supports such an inference. First, during the three months immediately preceeding the discharge of the fourteen security guards, Southwest hired twelve employees, only one of whom was older than 40, for other positions in the plant. Two of them were hired after Southwest signed the contract with Wackenhut Security Services, but before the contract went into effect and the plaintiffs were discharged. According to plaintiffs, the fact that Southwest hired the younger employees without giving the older plaintiffs an opportunity to compete for those jobs creates a prima facie case of age discrimination.

Plaintiffs fail to demonstrate, however, that they were actually available to take those jobs. We note that they neither allege nor demonstrate that Southwest could have postponed filling the relevant positions until after plaintiffs were discharged. We are forced to assume, therefore, that Southwest needed to hire employees for those positions during February, March, and April of 1984.

The record demonstrates that Southwest needed an in-house security force until the contract with Wackenhut went into effect in May, 1984. If Southwest had transferred plaintiffs when the other jobs came open, the company would have been forced to either do without a security force or attempt to hire temporary security employees. Southwest's decision to retain their current security employees until the contract went into effect while hiring new employees for the other positions does not support an inference of age discrimination. Likewise, the fact that most of those new employees were less than 40 years old is insufficient by itself to support an inference that Southwest failed to transfer plaintiffs because of their age.

■ Plaintiffs also argue that the new employees were on probationary status and that Southwest therefore should have replaced them with the plaintiffs once the plaintiffs were terminated. Although such an action was certainly within Southwest's power, nothing in the ADEA requires that younger employees be fired so that employees in the protected age group can be hired.

■ The evidence in the record also refutes plaintiff's claim that Southwest's refusal to transfer them was motivated by discrimination. Twenty new positions became available at Southwest after May 1, 1984. Of those twenty positions, nine positions were filled by individuals over the age of 40. In fact, three of those nine employees are plaintiffs in this action.[2] This evidence that 45% of the employees hired for open positions were as old or older than plaintiffs directly contradicts plaintiffs' claim that Southwest refused to retain or rehire them because of their age.

The second item of evidence that plaintiffs cite is a statement the personnel manager for Southwest made to M.E. Swindell. Mr. Swindell testified in his deposition that when he was told of his discharge he asked Mr. Ruddick, the personnel manager, about another job in the mill. According to Swindell, "[Ruddick] said you would have to take another physical examination and at your age, I don't believe you could pass it, is the identical words that he told me."

2. Billy Blount was rehired on May 8, 1985, Grady Barnes was rehired on May 20, 1985, and James Seaborn was rehired June 17, 1985.

Plaintiffs present this statement as direct evidence of discrimination based on age.

When the district court was considering the cross motions for summary judgment, plaintiffs had not made Swindell's deposition a part of the record. Consequently, the district court judge was entirely correct in disregarding the deposition.

After the judge issued the order granting summary judgment for defendant, plaintiffs filed a motion to alter the judgment according to Fed.R.Civ.P. 59(e). In that motion, plaintiffs stated that they had assumed that the deposition had been filed because defendant had referred to it in a brief submitted to the district court. The district court judge rejected that reason as insufficient, but considered the statement and found that it did not establish discriminatory motive. The court then denied plaintiffs' 59(e) motion.

Initially, we note that the decision whether to grant a motion to amend a judgment rests within the sound discretion of the trial judge and will not be overturned absent an abuse of discretion. *McCarthy v. Manson*, 714 F.2d 234 (2d Cir.1983). It is important that lawyers periodically check the papers on file in their cases to insure that they are familiar with what has and has not been filed with the court. Moreover, plaintiffs bore the responsibility for filing each document on which they wished to rely. *See generally* R. Keeton, *Trial Tactics and Methods*, sec. 9.21, at 350 (1973). An assumption that the opposing party will fulfill that obligation is not an objectively reasonable one, and we cannot say that the district court abused its discretion in finding such an excuse to be insufficient. Accordingly, we affirm the district court.

Alternatively, we note that even if the district court had erred in disregarding Mr. Swindell's deposition, it did not err in concluding that the deposition testimony did not help plaintiffs establish a prima-facie case of discrimination. Assuming for the purposes of summary judgment that Swindell's testimony accurately reflects the sequence of events, Ruddick's statement is not direct evidence of discrimination. Ruddick did not tell Swindell that he would not be transferred to another position because he was too old. Ruddick only told him he would have to reapply for employment and that his application required a physical examination. Ruddick then predicted that Swindell would not pass the examination. Although such a comment may have been inappropriate and condescending, it is not the sort of evidence that this circuit has recognized as being direct evidence of discrimination. *See, e.g., Williams*, 656 F.2d at 129 (scrap of paper with notation "Too Old—Lay Off").

At most, Ruddick's statement establishes his opinion of Swindell's physical condition. "Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1016 (1st Cir.1979). *See also Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1166–67 (8th Cir.1985).

Ruddick never prevented Swindell from applying for another job with Southwest and taking a physical exam, nor did he tell Swindell that he would not hire him if he passed the exam. There is no allegation that the physical examination was instituted or designed to weed out workers over the age of 40, nor is there any indication that workers of that age who did pass the examination were discriminated against in hiring. Swindell himself testified in his deposition that he did not believe that he was physically capable of working elsewhere in the mill. Given all of the evidence in the record, particularly Southwest's hiring history after May 1, 1984, the relationship of Ruddick's statement to Southwest's hiring practices is too attenuated to be of legal significance.

For all of the above reasons, the judgment of the district court is AFFIRMED.