**Neal INGLE, Plaintiff,**

v.

**SPECIALTY DISTRIBUTING COMPANY, Defendant.**

**No. 1:87–CV–313–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 21, 1988.

---

3. 

| Back wages = | $89,166.66 |
|---|---|
| Severance pay = | 6,666.66 |
| Fringe benefits = | 1,400.00 |
| TOTAL | $97,233.32 |

Curtis Arthur Thurston, Jr., Lawson & Davis, Sidney Lee Storesund, Atlanta, Ga., for plaintiff.

Celeste McCollough, John L. Taylor, Jr., Vincent Chorey Taylor & Feil, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 631–634 ("ADEA") alleging defendant unlawfully discharged him on the basis of his age. Plaintiff also seeks to have the court exercise pendent jurisdiction over his state law claims of intentional infliction of emotional distress, tortious interference with contract, slander and libel and breach of contract. Currently before the court is defendant's motion for summary judgment. For the reasons stated below the court GRANTS defendant's motion with regard to plaintiff's age discrimination claim and declines to exercise jurisdiction over plaintiff's state law claims.

FACTS

Defendant, Specialty Distributing Company, ("Specialty") is a wholesale distributor of electronic component parts. Defendant's Statement of Facts, ¶ 1. Plaintiff, Neal Ingle, was employed by Specialty from 1949 until May 7, 1985 at which time Specialty's Chairman of the Board of Directors, Robert Prather, terminated his employment. *Id.*, ¶ 2. During his years of employment with Specialty, Ingle worked his way up from the lowest level in the Shipping and Receiving Department to travelling sales representative to branch manager in Specialty's stores and finally, in 1981, to assume the newly created position of General Sales Manager for the Industrial Division. Deposition of Neal Ingle, pp. 30–38 ("Ingle Depo."). Ingle held this latter position until he was discharged in 1985.

In 1983, with the full knowledge of Specialty's then-owner, Bob Morris, Ingle's wife, Mary Alice Ingle, established a small proprietorship known as the Ulys Corporation. *Id.*, pp. 78–81, 89. Ulys purchased parts from Specialty, assembled them and then distributed the finished products through Specialty stores. Deposition of Mary Alice Ingle, p. 42. During Ulys' existence and while he was sales manager for Specialty, Ingle acted as "advisor" to Ulys. Ingle Depo., p. 80. Sometime in 1984 Bob Morris informed Ingle that his association

with both Ulys and Specialty was a conflict of interest and that Specialty would have to terminate its relationship with Ulys. *Id.*, p. 89–90. Morris told Ingle that Specialty branch managers had complained that Ingle was putting pressure on them to purchase Ulys products. *Id.*, pp. 93–94.

Later in 1984 Robert Prather apparently purchased Specialty from Bob Morris and became Chairman of the Board of defendant. Prather discussed with Ingle the idea of forming an O.E.M. ("Original Equipment Manufacture") division at Specialty. *Id.* p. 57. Prather asked Ingle to perform some preparatory work in conjunction with the creation of an O.E.M. division including calculating costs and needs for setting up the division. *Id.*, p. 58; Affidavit of Robert S. Prather ¶¶ 3–4. Ingle drafted two half-page outlines in response to Prather's requests for information regarding marketing and personnel for an O.E.M. division. See Exhibits to Affidavit of Neal Ingle. Prather states in his deposition that he considered Ingle's outlines to be inadequate and unsatisfactory. Prather Affidavit, ¶ 5. According to Ingle, Prather later informed him that Specialty was not ready for an O.E.M. division *not* that Prather was dissatisfied with his work on the project. Ingle Affidavit, ¶ 16.

In addition to asking Ingle to perform preparatory work on the proposed O.E.M. division, Prather asked Ingle on separate occasions to change his job responsibilities with Specialty and assume the branch manager position at the Specialty store in Columbus, Georgia and at the store in Jacksonville, Florida. With regard to the Columbus position, Prather offered Ingle the position of branch manager there and told him to consider the offer. *Id.*, p. 72. Ingle rejected the offer to take the Columbus job and, because he did not agree to the compensation terms of the Jacksonville position, he informed Prather he would not run the Jacksonville store. *Id.*, pp. 62–63, 72–73.

While Ingle was a general sales manager with Specialty, some branch managers allegedly complained that Ingle put pressure on them to purchase products on behalf of

Specialty from Ulys. Prather Affidavit, ¶ 14; Ingle Depo., pp. 93–94. In addition, Prather states that "Ingle was not performing his designated responsibilities for Specialty and was simply hanging around at the Specialty store in Doraville, Georgia." Prather Affidavit, ¶ 14. Prather asserts that he discharged Ingle because of the latter's involvement with Ulys, his refusal to perform job assignments and his refusal to accept a relocation of his employment. *Id.*, ¶ 16. Prather further states that he did not know Ingle's age at the time he fired Ingle and that Ingle's position as sales manager of the industrial division was not filled by anyone, but rather, Specialty merged the positions of sales manager for the consumer division and sales manager for the industrial division into one position labelled general sales manager. *Id.*, ¶ 18.

In his affidavit, Ingle states that he believed "a pattern respecting termination was developing regarding older employees" at Specialty because he believed that approximately one-third of Specialty's employees were forced to resign, been given early retirement or fired in about two months, at least one-half of whom were over the age of forty. Ingle Affidavit, ¶ 23. When Ingle was questioned during his deposition about the people he listed as having been discharged or "given the retirement package" he could not be sure whether the individuals were actually fired, voluntarily retired or resigned and moreover, he nowhere recites the ages of the individuals. Ingle Depo., pp. 107–115. Ingle acknowledges, both in his deposition and his affidavit that he was told (or heard through the grapevine) that if he did not accept the Columbus, Georgia branch manager job he would be fired. *Id.*, p. 74; Ingle Affidavit, ¶ 24. In addition, Ingle admits that no one at Specialty ever talked to him about his age and that he never discussed his age with anyone there. Ingle Deposition, pp. 76–77.

## DISCUSSION

### I. *ADEA Claim*

The protections of the ADEA are limited to persons over the age of 40. In order to

prevail in an ADEA action, a plaintiff must first prove a prima facie case of discrimination. If he succeeds in establishing a prima facie case, thereby giving rise to a rebuttable presumption of discrimination, the burden shifts to the defendant to show a legitimate non-discriminatory reason for its action. Upon such a showing by defendant, the burden shifts back to the plaintiff to carry the ultimate burden of proof that he was the victim of intentional age discrimination and that the defendant's proferred reasons for its action were mere pretext for discrimination. *Pace v. Southern Railway System,* 701 F.2d 1383 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

■ A plaintiff can make out a prima facie case of age discrimination in three ways: plaintiff may offer direct evidence of discriminatory intent; plaintiff may provide statistical proof of a pattern of discrimination; or plaintiff may produce evidence proving all four prongs of the test articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as adopted by the Eleventh Circuit and varied for purposes of the ADEA. *Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1529 (11th Cir.1985). To make out a prima facie case by means of the four-part test, the plaintiff must show: (1) that he is a member of the protected group (i.e., over 40 years old); (2) that the defendant took adverse employment action against him; (3) that he was qualified for the position from which he was discharged; and (4) that he was replaced by a person outside the protected group. *Pace, supra,* 701 F.2d at 1386.

The underlying inquiry into whether a prima facie case has been shown in any given situation is "whether an ordinary person would reasonably infer discrimination from the facts shown if those facts remain unrebutted." *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1443 (11th Cir.) *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). In order to carry his burden in making out a prima facie case under the ADEA, plaintiff must present "sufficient evidence to provide a basis for an inference that age was a factor in the employment decision." *Pace,* 701 F.2d at 1387. On a motion for summary judgment, in this context as in any other, once a movant supports its motion, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The Eleventh Circuit, in affirming a district court's grant of an employer's motion for summary judgment in an ADEA action, noted that, although the summary judgment standard requires that the court resolve all reasonable doubts in favor of the nonmoving party, "it does not require us to resolve *all* doubts in such a manner." *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987). The *Barnes* court quoted the Supreme Court opinion in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) that "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* 106 S.Ct. at 2555. In *Celotex* the Court held that, after adequate time for discovery, Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element ... on which the party will bear the burden of proof at trial." *Id.* at 2552–2553.

The Eleventh Circuit in *Barnes* also cited the Supreme Court case of *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and noted that a court must bear in mind the "actual quantum and quality of proof necessary to support liability" in any given case. In *Anderson,* the Supreme Court stated

> At the summary judgment stage the judge's function is ... to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict. [cit] If the evidence is merely

colorable ... or is not significantly probative, ... summary judgment may be granted.

*Id.* 106 S.Ct. at 2511. Interpreting the Supreme Court's reasoning in *Celotex* and *Anderson* in the context of an ADEA claim, the Eleventh Circuit held that summary judgment should be granted "if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury...." *Barnes,* 814 F.2d at 609.

In the instant case there is no dispute that plaintiff attempts to make out a prima facie case in two ways only. Plaintiff does not present any direct evidence of discriminatory intent. Instead, plaintiff tries to establish a prima facie case by proving the four prongs of the *McDonnell–Douglas/Pace* test and/or by providing "statistical proof" of a pattern of discrimination. The parties completed discovery in the case and plaintiff received two extensions in the time in which to respond to defendant's motion for summary judgment. Nonetheless, plaintiff has not set forth *specific facts* showing that there is a genuine issue for trial on plaintiff's prima facie case. Even resolving all reasonable doubts in favor of plaintiff, the court finds that the evidence presented by plaintiff is insufficient to require submission of the case to a jury because plaintiff has failed to make out a prima facie case of age discrimination.

■ Plaintiff appears to argue that he has presented evidence of "statistical proof of a pattern of discrimination" because he states in his affidavit that defendant has laid off approximately one-third of its work force at least one-half of whom are over 40 years old. Plaintiff provides no *statistical* proof that either one-third of Specialty's employees have been discharged or forced to retire or that, of those employees who may have been laid off, one-half were over the age of 40. "Testimony based on conjecture alone is insufficient to raise an issue as to the existence of an alleged policy" of discriminatorily discharging persons over 40 years old. *Slaughter v. Allstate Insurance Co.,* 803 F.2d 857, 860 (5th Cir.

1986). In addition, plaintiff's affidavit testimony contradicts his deposition testimony wherein he conceded that he generally had no knowledge of whether Specialty employees were forced out by the company or voluntarily retired or resigned and that no one in management at Specialty even discussed age as a factor in their decisionmaking.

■ Plaintiff also fails to present evidence sufficient to meet the four-part test for establishing a prima facie case. Although plaintiff fails to show that he was replaced by a person outside the protected class, he argues that he need not prove the fourth prong of the test because the facts of the case involve a reduction in the employer's work force. As the Eleventh Circuit noted in *Barnes, supra,* in a job-reduction case, "an employer rarely seeks more applicants for the jobs terminated, a circumstance that makes it almost impossible for a plaintiff to establish the fourth prong of the *McDonnell–Douglas* test." *Barnes* 814 F.2d at 609.

Although a plaintiff in a job-reduction case need not prove that he was replaced by a person under the age of forty he cannot establish a prima facie case unless he demonstrates "(1) that he was in a protected group and was adversely affected by an employment decision; (2) that he was qualified to assume another position at the time of discharge or demotion; and (3) evidence by which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Id.* at 609 (citing *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982)). As the *Barnes* court specified, this three-part test "establish[es] the proposition that the plaintiff's burden is to introduce evidence that supports a reasonable inference of intentional age discrimination." *Id.* at 609–610.

In the instant case plaintiff has not made a showing sufficient to establish an inference of intentional age discrimination. Plaintiff did not counter defendant's evidence that he was not satisfactorily per-

forming his job duties or that defendant had received reports that plaintiff had pressured branch managers to purchase Ulys Corporation products. Plaintiff admits that he declined defendant's offer to transfer to Columbus, Georgia and Jacksonville, Florida even though he heard he might be fired if he did not take the Columbus job and his employment contract specifies that defendant may, at any time, change or modify the location and duties and work to be performed by plaintiff. In addition, as noted above, the plaintiff offered no evidence to substantiate his conclusory allegation that defendant laid off several employees half of whom were over the age of 40.

For these reasons, the court GRANTS defendant's motion for summary judgment on plaintiff's ADEA claim.

## II. *Pendent State Law Claims*

■ The remainder of plaintiff's claims are brought pursuant to the law of Georgia. Plaintiff and defendant are both residents of Georgia and thus, this court may exercise jurisdiction over plaintiff's state law claims solely by virtue of its jurisdiction over plaintiff's ADEA claim. As the court has reasoned above, however, plaintiff's ADEA claim fails as a matter of law and must therefore be dismissed.

Pendent jurisdiction is a doctrine of the trial court's discretion, not of plaintiff's right. In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court stated that, unless considerations of judicial economy and convenience and fairness to litigants are present, a federal court should hesitate to exercise jurisdiction over state claims. The Court specified that

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* at 726, 86 S.Ct. at 1139. Although the Eleventh Circuit recognized that *Gibbs* "strongly encourages or even requires dismissal of state claims" when federal claims are dismissed before trial, it concluded that if the statute of limitations has run on a party's state claims, "dismissal of the state

claims would be an abuse of discretion." *L.A. Draper & Sons v. Wheelabrator–Frye Inc.*, 735 F.2d 414, 428 (11th Cir.1984).

The Eleventh Circuit's decision in *L.A. Draper* was in response to an Alabama court's dismissal of state claims. The foundation for the Eleventh Circuit's ruling was that the statute of limitations had run on the state law claims. The reasoning of *L.A. Draper* is not applicable to an action such as the instant one where the state law claims were brought under Georgia law. The Georgia Legislature enacted a "savings statute" which allows plaintiff six months in which to refile his action in state court. Thus, in practical effect, the statute of limitations has not run on plaintiff's state law claims.

The Georgia "savings statute" provides in part:

> When any case has been commenced in either state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state ... either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later.

Ga.Off'l Code Ann. § 9–2–61 (Supp.1986). Although the code section was at one time ruled as inapplicable to actions which originated in federal court (*See Blaustein v. Harrison*, 160 Ga.App. 256, 286 S.E.2d 758 (1981)), the Georgia Legislature amended the section in 1985 to specifically allow refiling in state court following the dismissal of an action originally commenced in federal court. Moreover, while on its face the statute allows refiling only where the plaintiff dismisses the original action, the Georgia courts have repeatedly held that the section "applies to involuntary as well as voluntary dismissals where the merits are not adjudicated." *Fowler v. Aetna Casualty & Surety Co.*, 159 Ga.App. 190, 192, 283 S.E.2d 69 (1981) (quoting *Bowman v. Ware*, 133 Ga.App. 799, 800, 213 S.E.2d 58 (1975)). *See also Douglas v. Kelley*, 116 Ga.App. 670, 158 S.E.2d 441 (1967) ("A dismissal of the case by the court on a

ground not adjudicating the merits counts as a voluntary dismissal for this purpose.").

In the instant case, plaintiff commenced the action in this court within the applicable statute of limitations period. In ruling that plaintiff's ADEA claim fails as a matter of law, this court does not reach the merits of plaintiff's pendant state law claims. Thus, under Ga.Off'l Code Ann. § 9–2–61, plaintiff may renew his state law claims in state court within six months of this court's dismissal of the claims. In light of the *Gibbs* Court's directive that state claims should be dismissed if the federal claims are dismissed before trial and given plaintiff's opportunity to refile his state law claims in state court pursuant to Ga.Off'l Code Ann. § 9–2–61, the court declines to reach the merits of plaintiff's pendent claims.

In summary, the court:

(1) GRANTS defendant's motion for summary judgment on plaintiff's ADEA claim and hereby DISMISSES WITH PREJUDICE Count I of plaintiff's complaint; and

(2) DECLINES to reach the merits of plaintiff's pendent state law claims and hereby DISMISSES WITHOUT PREJUDICE Counts II–V of plaintiff's complaint.