**John J. DICKSON, Plaintiff,**

v.

**AMOCO PERFORMANCE PRODUCTS, INC., Defendant.**

Civ. A. No. 1:92–CV–2748–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 2, 1994.

630

631

Alexander McArthur Irvin, Stuart, Irnvan, Stanford & Kessler, Atlanta, Georgia, for Plaintiff.

William A. Clineburg, Jr., Leticia D. Alfonso, King & Spalding, Atlanta, Georgia, for Defendant.

## ORDER

HULL, District Judge.

This matter is before the Court on defendant's Renewed Motion for Summary Judgment [43–1] and plaintiff's Motion for Leave to File a Sur–Reply in Opposition to defendant's Renewed Motion for Summary Judgment [47–1]. After reviewing the record in its entirety and hearing oral argument from each of the parties, the Court finds as follows.

## BACKGROUND

Plaintiff filed this action under Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*, (ADEA) which incorporates by reference Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* Plaintiff seeks job reinstatement and damages due to his termination by defendant on September 30, 1991. Although defendant advised plaintiff that his job termination was due to a reduction in the work force, plaintiff, who was 56 at the time of his discharge, claims that he was discharged because of his age.

## FACTS

Plaintiff began working for defendant Amoco Performance Products in Boundbrook, New Jersey, on July 17, 1987. Prior to this, beginning in the spring of 1987, he worked for Amoco as a contract employee, employed by Comet Design. Plaintiff was 52 years old when defendant hired him. On July 20, 1990, plaintiff accepted a transfer to Amoco's new research and development center in Alpharetta, Georgia. Plaintiff worked in the composites group department at the Alpharetta facility. His first supervisor was Mr. Owens who was later replaced by Mr. Maas. Mr. Kowalski managed plaintiff's department.

In October, 1990, plaintiff was involved in a dispute with another employee, Mr. Crowe, a supervisor. Mr. Kowalski conducted an investigation of the incident and as a result, plaintiff, Mr. Crowe and Mr. Maas were given written warnings on October 29, 1990, because of their disruptive behavior in the work place.

In May, 1991, defendant reorganized its composites and carbon fibers laboratories. Mr. Gardner, the director of research and

development for the advanced composites group, recommended plaintiff's transfer to the carbon fibers laboratory, which was understaffed. According to plaintiff, one of the reasons for this transfer was to separate plaintiff and Mr. Crowe. Plaintiff's new duties were single filament testing under the supervision of Mr. Barr, and also helping out in strand testing under the supervision of Mr. Spragg. Plaintiff was given the training necessary to perform these new jobs.

In late summer of 1991, defendant again reorganized its advanced composites and carbon fibers laboratories. The single filament and strand testing jobs were transferred to the advanced composites group. Because of this reorganization, plaintiff and Mr. Barr were transferred to the advanced composites group under the supervision of Mr. Hettinger.

Due to a decrease in business in the advanced composites area, defendant reduced its work force at the Alpharetta research and development center in September, 1991. Twelve of twenty-seven technicians from the composites and carbon fibers group, including plaintiff, were involuntarily terminated on September 30, 1991. Plaintiff appealed to defendant for a transfer to another division in the company, but this appeal was rejected.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

■ Rule 56(c), Fed.R.Civ.P., defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). "[U]nless the movant for summary judgment meets its burden under Rule 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion." *Id.*

■ While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

■ Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court interpreted Rule 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

■ In either situation, only when the movant meets this burden, does the burden shift to the opposing party, who must then present evidence to establish the existence of a material issue of fact. *Id.* After the movant discharges its burden, the nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, to demonstrate that a genuine issue of material fact does exist. *Id.*

## II. *APPLICABLE FEDERAL LAW*

■ The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of the employee's age. 29 U.S.C. § 623(a). In age discrimination cases, the plaintiff bears the ultimate burden of proving that age was the determinative factor in the employer's termination decision. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989).

■ Intentional discrimination can be proved by either direct, circumstantial or statistical evidence. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989); *Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525, 1529 (11th Cir.1985). Direct evidence is that evidence which, if believed, "establishes discriminatory intent without inference or presumption." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1993). "Only the most blatant remarks whose intent could only be to discriminate on the basis of age constitute direct evidence." *Clark*, 990 F.2d at 1226. *See also Carter*, 870 F.2d at 581–82. Evidence which only "*suggests* discrimination, leaving the trier of fact to *infer* discrimination based on the evidence" is, by definition, circumstantial. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081–82 (11th Cir.1990) (emphasis in original).

■ The United States Supreme Court recently clarified the proper allocations of the burden of proof and the burden of production for evaluating claims of intentional discrimination based on circumstantial evidence. In *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Court explained that its decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), prescribed the following approach for courts to follow in addressing the merits of a discrimination claim: If the plaintiff establishes a prima facie case, it creates a presumption that the defendant unlawfully discriminated against the plaintiff. *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2747 [citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)]. The presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case. *Id.* Although the burden of production shifts to the defendant upon the establishment of a prima facie case, the ultimate burden of persuasion—that the defendant intentionally discriminated against the plaintiff—never leaves the plaintiff. *Id.* If the defendant is able to produce evidence that the adverse actions were taken for "legitimate, nondiscriminatory reasons", the prima facie case is rebutted, and the plaintiff carries the full burden at trial of persuading the trier of fact not only that each of the defendant's proffered explanations is pretextual, but that the defendant intended to discriminate against the plaintiff. *Id.* at ——, 113 S.Ct. at 2749. ("[If] the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumption and burdens—is no longer relevant".)

■ If the defendant is able to meet its burden of production, "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' ..." *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, *suffice* to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* (emphasis added). However, in contrast to some courts' previous interpretations, rejection of the defendant's proffered reasons does not alone *compel* judgment for the plaintiff. *Id.* This is because the burden of persuasion rests always with the plaintiff.

■ On a motion for summary judgment, the shifting burdens accompanying such a motion are grafted onto the shifting burdens of the *McDonnell Douglas/Burdine/Hicks* analysis. The Court will discuss below the resulting burdens of proof and production. As a general matter, however, summary adjudication of a discrimination claim is fairly difficult. "[Because] in discrimination cases an employer's true motiva-

tions are particularly difficult to ascertain ... factual determinations [are] generally unsuitable for disposition at the summary judgment stage." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir.1993) [citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) and *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985) ].

### III. *APPLICATION*

#### A. *Plaintiff's Prima Facie Case*

 In cases based on circumstantial evidence, the plaintiff makes out a prima facie case for age discrimination if he shows: "(1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualification, he was rejected; and, (4) that after his rejection the position remained open and the employer continued to seek applicants of similar qualifications." *Earley*, 907 F.2d at 1082 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). The Eleventh Circuit has adopted a variant on this test for addressing reduction-in-force cases based on circumstantial evidence of discrimination. *Id.* In these cases, a plaintiff can establish a prima facie case by showing that: "(1) he was in a protected age group and was adversely affected by an employment decision; (2) he applied and was qualified for his current position or to assume another position at the time of discharge or demotion; and, (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Id.* [citing *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987) ]. The last prong of the prima facie case changes for reduction in force cases in that the court does not require the plaintiff to prove that he was replaced by a person not in the protected age group. The reason for this being, that in reduction in force cases, the employer rarely replaces the discharged employee. *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987). Instead, Plaintiff must submit evidence from which a fact finder could infer that defendant intended to discriminate on the basis of age when making its decision to terminate the employee.

In evaluating a plaintiff's prima facie case, the Eleventh Circuit has "repeated[ly] eschew[ed] ... an overly strict formulation of the elements of a prima facie case, especially in age discrimination cases." *Alphin v. Sears Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir.1991) (quoting *Carter*, 870 F.2d at 583).

 There is no dispute that plaintiff is a member of a protected group and was qualified for his position. However, defendant contends that plaintiff cannot show that he was terminated because of his age. Plaintiff has introduced evidence of age-based comments and statistical evidence to prove the third prong of the prima facie case. Plaintiff has stated that Mr. Kowalski, plaintiff's supervisor at the Alpharetta facility, made numerous age-based remarks and jokes to plaintiff about plaintiff's age. Plaintiff contends that although Mr. Michno made the final decision to terminate plaintiff, Mr. Kowalski provided the negative input about plaintiff during the salary ranking process. This salary ranking was one of the items used by Mr. Michno to determine which employees would be terminated.

Plaintiff has also introduced statistical evidence as proof that defendant intended to discriminate on the basis of age. Plaintiff states that technicians over 40 constituted only 33.6% of the technician group as a whole, but were 58% of the technicians terminated. Defendant has submitted its own statistics showing that before the reduction in force, technicians over age 40 made up 34.3% of the work force, and after the reduction, technicians over 40 made up 31.8% of the work force. However, defendant does not dispute that although employees over 40 were a minority in the work force as a whole, they were a majority of the workers chosen for termination.

 The Court finds that plaintiff has submitted enough evidence to make a prima facie case for discrimination under the ADEA. The statements made by plaintiff's supervisor referring to Plaintiff's age, wheth-

er intended as a joke or not, can raise an inference of age discrimination. *Corbin v. Southland International Trucks*, 25 F.3d 1545, 1550 (11th Cir.1994); *Rollins v. Tech-South, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). Further, statistical evidence showing that the terminations had a disproportionate impact on employees in the protected class can be used to "establish[ing] the nexus between age discrimination and adverse employment action...." *Pace v. Southern Railway System*, 701 F.2d 1383, 1388 (11th Cir.1983).

### B. *Defendant's Non–Discriminatory Reasons for Termination*

Once the plaintiff makes out a prima facie case of age discrimination, this creates a presumption that the defendant discriminated in a job related decision based upon the plaintiff's age. The burden of production now shifts to the defendant to articulate non-discriminatory reasons for the termination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) [citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ].

■ The defendant claims that plaintiff was terminated because his performance as a technician was not as highly rated as the performances of the technicians retained. Defendant states that Mr. Michno made the decision to terminate plaintiff based on: (1) the Amoco Performance Management (APM) (annual evaluation by employee's supervisor); (2) job effectiveness evaluation, based on nine performance criteria (criteria sheet), and (3) annual performance evaluation (annual salary rankings) (relative ranking of employees based on performance).

The APM evaluation is a process by which goals are set for the employee at the beginning of the year and then are reviewed at the end of the year to see how the employee performed relative to achieving these goals. There is no comparison with other workers in this evaluation.

Plaintiff's ranking in his job effectiveness evaluation resulted in a score of 152 out of a possible 270 points. Plaintiff's annual performance evaluation rated him 21st among 27 technicians in his group. According to defendant, these low performance ratings resulted in plaintiff's being included in the group of technicians terminated by Mr. Michno.

### C. *Plaintiff's Claim of Pretext*

Plaintiff must now introduce evidence raising an inference that the proffered non-discriminatory reasons are pretextual. In *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 921 (11th Cir.1993), the Eleventh Circuit recently set out the plaintiff's burden at this stage under the *McDonnell Douglas* analysis:

> In order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case ... Evidence already introduced to establish the prima facie case may be considered, and "[i]ndeed, there may be some cases were the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation" and establish pretext ... The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext. Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue. [citations omitted]

■ Further, and most importantly, "[T]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919, quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

■ The Court has already discussed plaintiff's evidence in support of his prima facie case, namely statistical evidence showing a disparate impact on employees in the protected class and the age-based comments of plaintiff's supervisor. This evidence also can be used to show pretext. *Hairston,* 9 F.3d at 921 (11th Cir.1993). In addition to this evidence, plaintiff contends that pretext can be shown by the shifting reasons put forth by defendant for plaintiff's termination. Initially, Plaintiff contends that defendant stated to the EEOC that technicians to be terminated were chosen on the basis of the job effectiveness evaluation conducted on August 26, 1991, for the purpose of determining which employees would be selected for termination. Also, this was the only criterion given by defendant in its first Answers to Mandatory Interrogatories and the Joint Scheduling Order. Then in defendant's Answer to Mandatory Interrogatories No. 3, defendant added the annual salary evaluations as a reason for termination. Next, plaintiff claims that defendant added the APM as a reason for termination in its Brief in Support of its Motion for Summary Judgment.

■ Reasons for discharge introduced after the fact can be used to show pretext. *Rosenfield v. Wellington Leisure Products, Inc.,* 827 F.2d 1493, 1496 (11th Cir.1987). In a race and national origin discrimination case, the Third Circuit held that a jury could disbelieve the defendant because the defendant advanced differing reasons at different times for refusing to hire the plaintiff. *Sinai v. New England Telephone and Telegraph Co.,* 3 F.3d 471 (1st Cir.1993).

Plaintiff also attacks the evaluations used by defendant for subjectivity and bias. Plaintiff claims that the problems with Mr. Crowe played a large role in lowering the ranking of plaintiff in the evaluations. Plaintiff states that one of the main reasons for a low ranking in "technical competence" was because plaintiff was new to his job in fibers strand testing. Plaintiff claims his transfer to this new section was at least partially motivated by his disputes with Mr. Crowe. However, there is not sufficient evidence that plaintiff's problems with Mr. Crowe or the

resulting subjectivity and bias in the evaluations were age-related. Therefore, the Court is unable to make findings on this issue.

The Court finds that plaintiff's evidence in support of his prima facie case, the evidence introduced as to defendant's shifting reasons for plaintiff's discharge, as well as all other evidence submitted, are sufficient to create a genuine issue of material fact regarding pretext as to the non-discriminatory reasons put forth by defendant.

### CONCLUSION

For the above stated reasons, the Court DENIES defendant's Motion for Summary Judgment [43–1]. The Court GRANTS plaintiff's Motion for Leave to File a Sur–Reply in Opposition to defendant's Motion for Summary Judgment [47–1]. The Court has, however, also considered the defendant's response to plaintiff's sur-reply which was filed with their Brief in Opposition to plaintiff's Motion for Leave to File the Sur–Reply.

IT IS HEREBY ORDERED.