**Charles BLACKBURN, Plaintiff,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH SYSTEM,**
**Defendant.**

**Civil Action No. 1:93–cv–1692–HTW.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 9, 1995.

Robert C.D. McDonald, Leslie Elizabeth Stewart, McDonald & Stewart, Norcross, GA, for plaintiff.

Stephen William Riddell, Steven J. Whitehead, James Joseph Padilla, Troutman Sanders, Atlanta, GA, Carol Eller Kirby, American Telephone & Telegraph Company, Law Division, Atlanta, GA, for defendant.

## ORDER OF COURT

HORACE T. WARD, Senior District Judge.

This matter is before the court on the following motions: (1) plaintiff's motion to file a notarized affidavit out of time, and (2) defendant's motion for summary judgment.

## FACTS

In December of 1965, plaintiff began working for defendant as a manufacturing engineer. Subsequently, plaintiff was employed in other engineering-related positions with defendant. In 1970, plaintiff was transferred to defendant's Network Cable Systems facility (commonly known as the "Atlanta Works") in Norcross, Georgia. During his tenure at the Atlanta Works, plaintiff held several managerial positions—the last of which was Technical Personnel Relations ("TPR") representative for defendant, a position plaintiff held since 1987. The TPR representative position is a salary grade level 7 ("SG–7") position.

Plaintiff's primary duties as a TPR representative were to assist line supervision in

addressing and resolving human resource issues among the engineering personnel at the Atlanta Works. According to the TPR job description, the responsibilities of the TPR representative included: (1) serving as an alternative channel of communication for technical personnel; (2) promoting professionalism; (3) developing and monitoring communication programs; (4) identifying and acting on areas of concern among technical employees; (5) communicating and monitoring company policy; (6) participating in new technical employee orientation; (7) publishing a quarterly news bulletin; and (8) participating in exit interviews. Plaintiff also conducted performance and compensation reviews and served as a national consultant in merging the technical universes of Bell Laboratories and Network Cable Systems.

Defendant's performance appraisal system rates employees into one of five categories: (1) Far Exceeds Objectives, or excellent; (2) Exceeds Objectives, or above-average; (3) Fully Meets Objectives, or satisfactory; (4) Partially Meets Objectives, or below average; and (5) Unsatisfactory. Plaintiff consistently received satisfactory or Fully Meets Objectives performance ratings while employed with defendant, including the years 1989, 1990, and 1991. Plaintiff never complained about the accuracy of these ratings. He further admits that these ratings were not inaccurate or discriminatory.

In January of 1992, defendant notified all Atlanta Works management, technical personnel and tier employees of a work force surplus and imbalance, and that steps needed to be taken to resolve the surplus. At that time, plaintiff was an SG–7 manager who reported to Edythe Diette, Manager, R & D Business Operations.

As a result of the surplus and force imbalance, defendant determined that a reduction-in-force ("RIF") was necessary. Therefore, defendant established a committee comprised of 12 managers (all of whom were over 40 years old) to define the size and scope of the work force surplus and imbalance ("RIF Committee"). All employees within each salary grade level were placed by the RIF Committee into "retained" or "at risk" categories based on their performance ratings. With respect to employees such as plaintiff who were SG–7 managers, those with ratings of Exceeds Objectives or higher were placed in the "retained" category, while those with ratings of Fully Meets Objectives or below were placed in the "at risk" category.

Of the SG–7 employees, five (four of whom were over 40) were rated Far Exceeds Objectives, 12 (11 of whom were over 40) were rated Exceeds Objectives, eight (seven of whom, including plaintiff, were over 40) were rated Fully Meets Objectives, and three (all over 40) were rated Partially Meets Objectives. Those in the "at risk" band were to be terminated unless (1) they obtained other employment with defendant, or (2) they possessed specialized knowledge or skills necessary for the continuation of operations at the Atlanta Works. The RIF Committee identified five SG–7 employees in the "at-risk" category who did possess special skills or knowledge necessary for defendant's continuation of its Atlanta Works operations, thus they were retained; four of these five employees were over 40.

Defendant determined that plaintiff's TPR representative position was redundant and that plaintiff was performing many of the same functions that were being performed by the Atlanta Works human resources staff or line management. Defendant also determined that plaintiff possessed no specialized knowledge or skill that warranted retaining him. Thus, on March 5, 1992, defendant notified plaintiff that his position would be eliminated, and he would be terminated on May 4, 1992, unless he obtained another position with the company.

Defendant terminated plaintiff from employment on May 4, 1992. At that time, plaintiff was 58 years old. Some of his responsibilities were turned over to Judy Archer, who was under the age of 40. Ms. Archer, an Administrative Associate, held a salary grade position of SG–2—five grades below that of plaintiff. Other duties—including the function of counseling technical employees—were transferred not to Ms. Archer, but to technical line management. On July 28, 1993, plaintiff filed a complaint against defen-

dant alleging that he was included in the RIF because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C.A. § 621, *et. seq.*

## DISCUSSION

### A. *Plaintiff's Motion To File An Out Of Time Affidavit*

Plaintiff requests that this court allow him to file an out of time notarized affidavit in support of his response to defendant's motion for summary judgment. In support of his motion, plaintiff states that he inadvertently failed to have the affidavit notarized before filing it with this court in connection with his response to defendant's motion for summary judgment. Defendant does not oppose plaintiff's motion. THEREFORE, after due consideration and for good cause shown, this court hereby GRANTS plaintiff's motion to file a notarized affidavit out of time.

### B. *Defendant's Motion For Summary Judgment*

#### 1. *Summary Judgment Standard*

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir.1986); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983); Fed. R.Civ.P. 56(c). To determine if the moving party meets its burden of proof, the court must view all evidence and inferences to be drawn from it in a light most favorable to the party opposing the motion. *Carlin Communication*, 802 F.2d at 1356; *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983).

The Supreme Court has addressed the burdens of proof which each party must carry on a motion for summary judgment and stated that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quotation omitted).

The nonmoving party is required to identify specific facts which demonstrate that there is a genuine issue for trial and may not rest on the allegations or denials in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, in order to survive a motion for summary judgment, the non-moving party need only present evidence from which a jury might return a verdict in his or her favor. If he or she does so, there is a genuine issue of fact that requires a trial. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.

#### 2. *Plaintiff's Age Discrimination Claim*

The United States Supreme Court, in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), recently elaborated on the distribution of burdens of proof in employment discrimination cases. As a general matter, the three-part allocation of proof first established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), governs a claim of discriminatory discharge under the ADEA.

Under this framework, a plaintiff must first prove, by a preponderance of the evidence, a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). After a plaintiff has made a *prima facie* case, the burden shifts to the defendant to offer a nondiscriminatory reason for the adverse employment action. *Id.* at 255–56, 101 S.Ct. at 1094–95. After the defendant offers such an explanation, the burden shifts back to the plaintiff to prove that the defendant's prof-

fered reason is merely a pretext and was not the true reason for the employment decision. *Id.*

■ A plaintiff may establish a *prima facie* case by direct evidence of discriminatory intent, or by circumstantial evidence, or by statistical or other evidence which shows a pattern and practice of conduct which adversely affects protected employees. *See, e.g., Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435 (11th Cir.1985), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

■ In a reduction in force age discrimination case, a plaintiff establishes a *prima facie* case of age discrimination by showing:
(1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue.

*Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1082 (11th Cir.1990).

At this stage of these proceedings, this court will focus its inquiry on plaintiff's responsibility, as non-movant, to demonstrate that genuine issues of fact remain in this case which require resolution by a jury.

■ Plaintiff has satisfied the first requirement of the three-part test set forth by *Early.* With respect to the second require-ment, when an employee's position is entirely eliminated, he or she "must show that he was qualified for another *available* job with that employer." *Id.* (emphasis added). Here, plaintiff claims that he was qualified for an engineering position that was filled by John Hughes,[1] who plaintiff acknowledges was over 40 years old. Mr. Hughes, like plaintiff, had a salary level of SG–7 and was rated Fully Meets Objectives. Defendant determined that Mr. Hughes possessed specialized and critical knowledge and skills. Thus, he was downgraded from his existing position, which was being eliminated, to the open engineering position.

■ The uncontroverted testimony of Edythe Diette provides that Mr. Hughes possessed certain critical skills relating to the Atlanta Works documentation system and customer process audits—skills that the record indicates that plaintiff lacked. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590 (11th Cir.1987) (no discrimination where employer transfers better qualified employee, not plaintiff, to vacant position). In addition, defendant's downgrade notice regarding Mr. Hughes' downgrade indicates that it would take a minimum of two years for someone else to develop his level of expertise. Plaintiff has not offered evidence to dispute this claim. Thus, plaintiff has not shown that he was qualified for an "available" position with defendant and, as such, has not satisfied the second element for making a *prima facie* case under the ADEA.[2]

■ Assuming *arguendo* that plaintiff could show that he was qualified for an avail-

---

1. Plaintiff also states that he was qualified for Ms. Archer's Administrative Assistant position. He claims that his 26 years experience with defendant qualifies him for this position. This court does not believe that such evidence is sufficient to establish qualification. More importantly, though, plaintiff has not introduced evidence that this position was available on May 4, 1992, when plaintiff was terminated.

2. Plaintiff also alleges that defendant discriminated against him on the basis of age by failing to find him another position within the company after his position had been eliminated. A similar argument was made in the *Earley* case, to which the court responded that nothing in the ADEA " 'requires that younger employees be fired so that employees in the protected age group can be hired.' " *Earley,* 907 F.2d at 1083 (quoting *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987)). This court also agrees with the *Earley* court that allowing an employee to recover in reduction in force cases merely by showing that he or she was qualified for another position within the company, regardless of whether or not the position was available at the time the employee was terminated, "would effectively prohibit employers from planning and implementing RIFs if the reductions affected employees in the protected age group. If plaintiffs need only prove that they were qualified for some available position at any earlier or later time, virtually every plaintiff would be able to meet this requirement of a prima facie case." *Id.* at 1083 n. 4.

able position with defendant, the next issue is whether plaintiff has introduced evidence to satisfy, or at least create a genuine issue of material fact as to, the third element—namely, that a fact finder might reasonably conclude that defendant intended to discriminate on the basis of age in terminating plaintiff.

Defendant has asserted that it terminated his employment as a result of the RIF; more specifically, plaintiff's position was eliminated in the RIF. As illustrated above, the "retained" and "at risk" categories used by the RIF Committee to determine which SG–7 employees were to be retained in connection with the RIF were based on each employee's performance ratings. Those whose ratings were Fully Meets Objectives or below were placed in the "at risk" group. Plaintiff was in this category. Those whose ratings were Exceeds Objectives or higher were placed in the "retained" category. Plaintiff acknowledges that defendant's use of these categories was not improper or discriminatory.

Plaintiff argues instead that defendant's discrimination occurred primarily after employees were placed into these categories. More specifically, several employees were moved from the "at risk" to the "retained" list because defendant deemed these employees to possess specialized knowledge or critical skills necessary for defendant's continued operation of the Atlanta Works facility. Plaintiff claims that, in practice, defendant based its decisions regarding which "at risk" employees were to be terminated, and which were to be retained, on whether the employee was eligible for retirement under defendant's pension plan. Employees were retained, plaintiff claims, if they were not pension eligible, but they were terminated if they were eligible.

Plaintiff, however, has not produced sufficient evidence to support this claim. Neither plaintiff's affidavit—which offers numerous legal conclusions instead of testimony based on personal knowledge—nor anything else in the record provides this court with evidence to support plaintiff's allegations that defen-

dant's decisions were based on whether the employee was eligible for retirement. In fact, the record indicates that nine of the SG–7 employees retained by defendant had qualified for the retirement plan. Nor has plaintiff described the relevancy of this claim (that pension eligibility affected defendant's employment decisions) to plaintiff establishing a *prima facie* case under the ADEA—specifically that defendant intentionally discriminated against plaintiff on the basis of age.[3]

▇▇▇ Plaintiff also contends that many of his job duties were turned over to an employee, Ms. Archer, who was less than 40. Even if some of his duties were given to Ms. Archer, though, this would not be sufficient to find that plaintiff was "replaced" by someone under 40 years old. As stated above, plaintiff's position was eliminated as a result of the RIF. Whenever a job is eliminated, in connection with a reduction in force or otherwise, at least some the duties of the eliminated job will need to be undertaken by other employees.

As in *Langston v. Carraway Methodist Hospitals of Alabama, Inc.*, 840 F.Supp. 854, 865 (N.D.Ala.1993), plaintiff was not replaced by another employee. Instead, his duties were dispersed and allocated to persons in other departments. *See id.* at 866. In an analogous case involving alleged age discrimination, *Myers v. Glynn–Brunswick Memorial Hosp.*, 683 F.Supp. 1387 (S.D.Ga.1988), the plaintiff argued that a new variation in the *prima facie* case requirements should be recognized for reduction in force cases. More specifically, the plaintiff in *Myers* argued that the reassignment of the duties of an employee, terminated in a reduction in force, to other employees outside of the protected class is tantamount to the terminated employee being replaced by someone outside the protected class. *Id.* at 1392. In rejecting this argument, the court in *Myers* stated,

> The traditional *prima facie* cases suggest discrimination because we can see, objectively, that individuals who are comparable in qualification and job duties, but who are different in age, gender or race, were

---

**3.** In fact, the record indicates that of the 28 SG–7 employees at the Atlanta Works, 25 were over the age of 40. In addition, of the 22 SG–7 employees retained, 19 were over 40, and four were older than plaintiff. In addition, of the five SG–7 "at-risk" employees who were eventually moved into the "retained" group, four were over 40 years old.

treated differently. All other variables are objectively equal except the suspect classification.... Persons holding completely distinct administrative positions are not "comparable individuals" and a comparison of the ages of those holding eliminated positions with the ages of those who assumed their duties reveals nothing.

*Id.*

In the instant case, undisputed evidence dictates that plaintiff's primary duties as TPR representative were to assist line supervision in addressing and resolving human resource issues among the engineering personnel at the Atlanta Works. The TPR representative served as an alternative route of communication for technical employees—for example, if these employees did not desire to approach their supervisors or approached them but were not satisfied with their responses. Most or all of plaintiff's duties could be, and often were, performed directly by line supervision. Put another way, plaintiff served as a "gap filler" between human resources and the engineering supervisors.

In contrast, Ms. Archer was hired as an Administrative Associate, whose salary grade level was five grades below that of plaintiff. Moreover, plaintiff acknowledges that not all of his duties were reassigned to her. Uncontroverted evidence indicates that plaintiff's primary function of counseling technical employees was assigned to technical line management, not Ms. Archer.[4] Thus, it cannot be said that Ms. Archer and plaintiff were comparable individuals or that she replaced plaintiff. Simply put, plaintiff's position was completely eliminated in the RIF, and his duties were assigned to others—including technical line management and Ms. Archer.

 This court has carefully considered the record in this case, and now concludes

that plaintiff has failed to present a genuine issue of material fact. Defendant also has shown that it is entitled to judgment as a matter of law. Even considering all the evidence and the inferences therefrom in the light most favorable to plaintiff, this court has determined that no reasonable finder of fact could find that plaintiff has established a *prima facie* case under ADEA.[5]

Thus, defendant is entitled to summary judgment.

## *CONCLUSION*

THEREFORE, after due consideration, this court GRANTS plaintiff's motion to file a notarized affidavit out of time, GRANTS defendant's motion for summary judgment, and directs the clerk of court to DISMISS this case.

SO ORDERED, this 9th day of March, 1995.[6]

---

**4.** Further, plaintiff states that Ms. Archer had no prior experience in providing service to the technical community or in mainframe applications. While plaintiff argues that these facts somehow illustrate defendant's discrimination, this court believes they reinforce the fact the Ms. Archer was an Administrative Associate and that she did not "replace" plaintiff.

**5.** Further, even if plaintiff had presented a *prima facie* case, defendant offered a nondiscriminatory reason for plaintiff's termination—namely, the RIF and plaintiff's inclusion in the "at-risk" category. Plaintiff has not presented this court with

any evidence sufficient to create an issue of material of fact as to whether the RIF was simply a pretext—that is, not the true reason for plaintiff's termination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. As stated above, plaintiff has totally failed to provide this court with evidence that defendant discriminated against plaintiff on the basis of age.

**6.** As a courtesy to the clerk of court, this court notes that this Order terminates entry nos. 17 and 19 on the docket sheet.